**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**PENSACOLA DIVISION**

LINDSEY L. GLENN,

      Plaintiff,

v.                                  Case No. 3:09cv1/MCR/MD

KIRK LANIER, individually;
CHARLES MORRIS, individually and
as Okaloosa County Sheriff;
PEOPLE'S FIRST COMMUNITY
BANK, and MICHELLE WHEELER

      Defendants.
_____/

# O R D E R

Before the court are the summary judgment motions of Defendants Charles Morris ("Morris") (doc. 31) and Kirk Lanier ("Lanier") (doc. 32). Plaintiff Lindsey Glenn ("Glenn") has brought claims of false arrest, conspiracy, and malicious prosecution against Morris and Lanier, alleging that they acted under color of state law to violate his Fourth and Fourteenth Amendment rights. 42 U.S.C. § 1983. Glenn also alleges state common law claims against both defendants. In addition, Glenn asserts § 1983 and state common law claims against People's First Community Bank ("PFCB") and Michelle Wheeler ("Wheeler"), both of whom are non-governmental parties who have not appeared in this suit.[1] After carefully considering the parties' briefs and the record in this case, the court finds that Morris' and Lanier's motions should be granted.

---

[1] Glenn originally filed his complaint on December 9, 2008, in the First Judicial Court of Okaloosa County, Florida. Moore and Lanier subsequently removed it to this court on January 2, 2009. The complaint contains seven counts pursuant to § 1983: (1) false arrest (Lanier); (2) malicious prosecution (Lanier); (3) supervisory liability (Morris); (4) conspiracy (Lanier); (5) false arrest (PFCB and Wheeler); (6) malicious prosecution (PFCB and Wheeler); (7) conspiracy (PFCB and Wheeler). Glenn also assets four claims pursuant to Florida state law: (1) false arrest (Lanier); (2) false arrest (Morris); (3) malicious prosecution (Lanier); and, (4) malicious prosecution (PFCB and Wheeler).

**BACKGROUND**

On April 27, 2005, Linda Bell, an employee of Crown Motors, placed a business check written on Crown Motors' account in the mailbox of her home in Shalimar, Florida. She noticed later the same day that the letter was gone even though the postman had not yet arrived.  Two days later, Bell learned that two of Crown Motors' checks – numbers 6556 for $1,994.28 and 6557 for $1,988.34 – had been cashed on April 28 even though the actual checks were still in the company's check book.  Ms. Bell immediately went to PFCB in Shalimar, where Crown Motors held its account, and filled out an affidavit of forgery.  An investigation showed that the forged checks had been issued to the order of Lindsey Glenn and had been signed in the name of Mike Duncan, a Crown Motors employee.  The written endorsement on the back of each check was signed in the name of Lindsey Glenn.

Ms. Bell also reported the theft to the Okaloosa County Sheriff's Office, which assigned the investigation of the case to Lanier, an officer in the Sheriff's Office.  Lanier learned during his investigation that Duncan had not, in reality, signed the checks.  Lanier determined that the two Crown Motors' checks had been cashed separately at PFCB's branches in Destin, Florida and Panama City, Florida.  Lanier also learned that PFCB teller Michelle Wheeler had handled the Destin transaction for PFCB and that she was currently working at the bank's Shalimar office.  Lanier visited her there, and Wheeler told him that she believed she could identify the person who cashed one of the checks because she had taken his driver's license as identification and written its number on the back of the check. Lanier already had a photograph of Glenn, whose name appeared on the check, and he showed it to Wheeler.  He did not present her with photographs of any other suspects. Wheeler tentatively identified Glenn as the man who had cashed the check but cautioned that she could not be completely certain.  However, Wheeler also told Lanier that the Destin office had a security videotape that might have recorded the transaction.  On May 4, 2005, Lanier obtained the tape, and after reviewing it, determined that the man who appeared in the videotape matched Glenn's photograph.

Relying on Wheeler's identification and his own conclusion from the tape, Lanier completed an addendum of probable cause and an application for an arrest warrant for

Glenn. The forms do not specify the date on which they were completed, but the Okaloosa County Sheriff's Office issued a warrant application on May 25, 2005. Pursuant to the policy of the Sheriff's Office, the warrant application was reviewed and approved by an attorney in the State Attorney's Office in Okaloosa County. The warrant application was then submitted to a judge, who authorized the warrant's issuance on May 26, 2005. Glenn was subsequently arrested on May 30, 2005, by the Tampa Police Department and was charged with grand theft, forgery, and uttering a forged instrument in violation of Fla. Stats. 812.414(2)(c)(1), 831.01, and 831.02. According to Glenn, he was incarcerated at the Hillsborough County, Florida jail on the day the forged checks were cashed. The record does not reflect what occurred between Glenn's arrest and August 8, 2005, but on that day the state attorney's office entered a nolle prosequi for each of the charges against Glenn because of insufficient evidence.[2] Neither Lanier nor Morris, the Okaloosa County Sheriff at the time, was involved in Glenn's arrest or prosecution.

## STANDARD OF REVIEW

A motion for summary judgment should be granted when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of a suit under the governing law. *Id*. The court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in its favor. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "If reasonable minds could differ on the inferences arising from undisputed facts, then a court should deny summary judgment." *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1534 (11th Cir. 1992).

---

[2] Under Florida law, a nolle prosequi filing by the State immediately terminates a proceeding, and any action taken after the nolle prosequi is a nullity. *See State v. Aguilar*, 987 So.2d 1233, 1235 (Fla. 5th DCA 2008).

The moving party has the initial burden of showing the absence of a genuine issue as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). Once the movant satisfies its burden of showing the absence of a genuine issue of material fact, the burden shifts to the nonmovant to produce "specific facts showing there is a genuine issue for trial." *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (emphasis omitted). A general denial unaccompanied by any evidentiary support is not sufficient. Fed. R. Civ. P. 56(e)(2). Instead, the nonmoving party must "demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604,608 (11th Cir. 1991).

**DISCUSSION**

1.    Kirk Lanier

    A.  The Section 1983 Claims

Glenn claims that Lanier violated his Fourth and Fourteenth Amendments rights by falsely arresting him, conspiring to falsely arrest him, and maliciously prosecuting him. Glenn also claims Morris violated his Fourth and Fourteenth Amendment rights in his capacity as Lanier's supervisor. Rights guaranteed under the Fourth Amendment apply to state and local governments through the Fourteenth Amendment's Due Process Clause. *Mapp v. Ohio*, 367 U.S. 643, 654-55 (1961). Liability under § 1983 arises only when a plaintiff shows that he was deprived of constitutional rights by a person acting under color of state law.[3] *Almand v. DeKalb County, Georgia*, 103 F.3d 1510, 1513 (11th Cir. 1997). Governmental officials acting within the scope of their discretionary authority are entitled to qualified immunity from civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*,

---

[3]  Section 1983 is not itself a source of substantive rights; instead, it is a means by which a plaintiff can assert rights guaranteed by the Constitution or, under specific conditions not relevant here, a federal statute. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *see also Doe 1-13 By and Through Doe, Sr. 1-13*, 136 F.3d 709, 713 (11th Cir. 1998) (discussing rights that arise by statute).

457 U.S. 800, 818 (1982)).  Qualified immunity constitutes a complete immunity from suit, not merely a defense, and its applicability in a case should be addressed as a threshold question.  *See Harlow*, 457 U.S. at 818.  To be eligible for qualified immunity, an official must demonstrate that she was performing a "discretionary function" at the time of the alleged constitutional violation.  *Crosby v. Monroe County*, 394 F.3d 1328, 1332 (11th Cir. 2004).  If the official does so, the burden shifts to the plaintiff to show that the official is not entitled to immunity because (1) the official committed a constitutional violation, and (2) the constitutional right was clearly established at the time.[4]  *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Crosby*, 394 F.3d at 1332.  Discretionary functions are determined by examining if the official's acts constitute job-related functions that were within the scope of the official's authority.  *Holloman v. Harland*, 370 F.3d 1252, 1265 (11th Cir. 2004).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."[5]  *Saucier*, 533 U.S. at 201.

"The first step in any [§ 1983] claim is to identify the specific constitutional right allegedly infringed."  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).  Unfortunately, Glenn's

---

[4]  The Supreme Court has recently ruled that courts are no longer required to follow *Saucier*'s "inflexible" two-part test in sequential order.  *Pearson v. Callahan*, 129 S.Ct. 808, 810 (2009).  "The judges of the district courts and the courts of appeals should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand."  *Id.*

[5]  Glenn's complaint is not entirely clear on whether he has sued Morris in both his individual and official capacities.  Qualified immunity applies only to a defendant who is sued in his individual capacity because in those circumstances a plaintiff can seek money damages directly from such an officer.  *Busby v. City of Orlando*, 931 F.2d 764, 772 (11th Cir. 1991).  "The qualified immunity defense does not extend to municipalities or to claims against state actors in their official capacities." *Heggs v. Grant*, 73 F.3d 317, 320 n.5 (11th Cir. 1996).  This case presents the unusual circumstance in which the plaintiff argues for a more restricted interpretation of his claims than do the defendants.  Morris assumes Glenn sues him in Count III under § 1983 in his individual and official capacities; Glenn, who filed his complaint *pro se* but is now represented by counsel, argues that he has only brought his § 1983 claim against Morris individually.  The court agrees with Glenn that only an individual claim is asserted under § 1983 in Count III.  Count III specifically states that Morris is sued in his individual capacity, and Glenn only seeks damages from Morris, not Okaloosa County. Glenn states generally in Paragraph 14 that Morris is sued in his individual and official capacities, but this refers both to Count III and to the state law claim in Count IX that is brought against Morris in his official capacity.  Courts are required to construe *pro se* pleadings broadly but do not have "license to serve as *de facto* counsel for a party." *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1369 (11th Cir. 1998).  In light of his counsel's argument, the court concludes that Glenn's § 1983 claim in Count III is brought against Morris in his individual capacity.

Count I does not readily provide an answer to this inquiry. Glenn alleges Lanier violated his Fourth Amendment rights by filing a false report with the Okaloosa County Sheriff's Office and, consequently, is liable for false arrest and false imprisonment. Under some circumstances, a person arrested and detained without probable cause can assert claims for false arrest and false imprisonment pursuant to § 1983. *See Case v. Eslinger*, 555 F.3d 1317, 1326-27 (11th Cir. 2009); *Ortega v. Christian*, 85 F.3d 1521, 1526 (11th Cir. 1996). In this case, however, it is undisputed that the arrest warrant was facially valid and that Lanier played no role in Glenn's arrest or detention. These facts preclude Glenn's claims for false arrest and false imprisonment because a person mistakenly arrested and briefly detained pursuant to a valid warrant does not suffer a constitutional harm. *See Baker v. McCollan*, 443 U.S. 137, 143-44 (1979). Glenn, who is now represented by counsel, concedes that Count I does not state an arrest or imprisonment claim, arguing instead that his *pro se* pleading should be liberally construed as an action for an unduly suggestive lineup identification. According to Glenn, the fact that Lanier only showed Wheeler a photograph of himself and no other suspect violated his due process rights protected by the Fourteenth Amendment. In so doing, Glenn has abandoned his Fourth Amendment false arrest claim asserted in Count I. The Eleventh Circuit has provided clear guidance that a nonmovant must respond to issues raised in a motion for summary judgment in order to preserve any claim the nonmoving party might have on those issues. "There is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. . . . Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (internal quotation and citation omitted); *see also McIntyre v. Eckerd Corp.*, 251 Fed.Appx. 621, 626 (11th Cir. 2007). Lanier's motion for summary judgment addresses Glenn's false arrest claim in detail. In light of Glenn's explicit rejection of this claim in his response, the court considers only the Fourteenth Amendment claim

based on an overly suggestive lineup.[6]

Lanier argues that qualified immunity protects him from Glenn's allegations in Count I because Lanier's actions constitute discretionary duties undertaken in his capacity as a Sheriff's Office investigator. Glenn does not dispute this contention in relation to any of his § 1983 claims against Lanier or Morris. The burden then shifts to Glenn to demonstrate why qualified immunity is not applicable here. *See Saucier*, 533 U.S. at 201. Relying on *Simmons v. United States*, 390 U.S. 377 (1968), Glenn argues that Lanier should have known that clearly established law prevented him from presenting only one photograph of Glenn to Wheeler in obtaining an identification. In *Simmons*, two persons without masks robbed a bank in daylight and were clearly seen by the bank tellers. The next day police officers showed several photographs of the two suspects to the bank employees, who identified them as the robbers. Simmons argued that by only showing the employees pictures of himself and the other suspect, the police violated his Fourteenth Amendment due process rights by substantially increasing the likelihood of a misidentification. The Court agreed that using only photographs of a single individual, or multiple photographs in which the same individual recurs, heightens the risk of a misidentification. *Id*. at 383-84. Nevertheless, *Simmons* does not, in itself, support Glenn's contention that clearly established law prohibited Lanier from showing Wheeler only the one photograph of him. *Simmons* stressed that each case must be considered in the totality of the circumstances presented. Viewed in this context, the Court found no due process violation based on the facts that the tellers plainly saw the unmasked suspects and were shown the photographs the day after the robbery substantially lessened the possibility of a misidentification. *Id*. at

---

[6] Even if Glenn had asserted a Fourth Amendment claim under Count I, Lanier would be entitled to qualified immunity. Glenn alleges that Lanier submitted information he knew was false in order to obtain an arrest warrant. An officer "may be held liable under 42 U.S.C. § 1983 for submitting an application for an arrest warrant that contains false information." *Holmes v. Kucynda*, 321 F.3d 1069, 1083 (11th Cir. 2003). In *Holmes*, an officer was not entitled to qualified immunity because he relied on statements he knew were false in order to obtain an arrest warrant. *Id*. at 1083-84. As discussed below, Lanier had arguable probable cause to apply for Glenn's arrest warrant because, under the facts presented here, a reasonable officer could have believed that Glenn was man who presented the forged checks to Wheeler. An officer who reasonably believes he has cause to obtain a warrant is entitled to qualified immunity even if the officer is objectively mistaken. *See Rushing v. Parker*, — F.3d —, No. 09-12637, 2010 WL 918323, at *3 (11th Cir. March 16, 2010).

384-85. Contrary to Glenn's contention, *Simmons* does not stand for the proposition that an overly suggestive lineup identification constitutes a *per se* constitutional violation. Instead, the identification method and the surrounding circumstances must be considered together in order to determine if a suspect's Fourteenth Amendment rights have been violated. "Unlike a warrantless search," the Court has stated, "a suggestive preindictment identification procedure does not in itself intrude upon a constitutionally protected interest." *Manson v. Barthwaite*, 432 U.S. 98, 113 n.13 (1977).

For this reason, Glenn's primary reliance on *Cikora v. Dugger*, 840 F.2d 892 (11th Cir. 1988) is misplaced. *Cikora* reiterated the Eleventh Circuit's two-part test for determining whether a lineup identification gives rise to a constitutional violation: (1) the original identification procedure must be unduly suggestive, and (2) the totality of circumstances must show that the identification is not otherwise reliable. *Cikora*, 840 F.2d at 895. In *Cikora*, a habeas corpus case, the petitioner alleged that an out-of-court identification of him introduced at trial violated his constitutional rights. Police officers showed the crime victim photographs of six white males one month after an attempted burglary; each photograph showed men with slightly different facial markings, but only the petitioner's photo had height markings on the photograph. The Eleventh Circuit rejected the suggestion that the identification was obtained by overly suggestive means and that, as a result, its admission was clearly erroneous. *Id*. at 895. *Cikora* stressed that a constitutional violation relates "not to the suggestiveness of the procedure *per se* but rather to the final conclusion about the reliability of the identifications, as measured by the totality of the circumstances, including any impermissible suggestions." *Id*. at 896. Glenn misapplies the *Cikora* test in this case by overlooking the fact that Lanier relied on more than Wheeler's tentative identification of him as the person who cashed the checks. Lanier also reviewed PFCB's security tape to identify Glenn.[7] Lanier was aware that Wheeler

---

[7] Glenn argues that he has been prejudiced in this case because he did not receive a copy of the videotape prior to filing his summary judgment response and that Lanier and Morris were required to provide him a copy of it in their Fed. R. Civ. P. 26 initial disclosures. The court finds this argument unpersuasive because Glenn did not exercise due diligence in obtaining the tape. Rule 26(a)(1)(A)(ii) requires a party to provide either a copy "or a description" of electronically stored information. Lanier and Morris identified the

could not definitively identify Glenn, and the addendum of probable cause supporting the warrant states that Lanier relied on the videotape as well as on Wheeler's identification. Taken as a whole, therefore, the evidence supporting Lanier's warrant application goes beyond the use of a single photograph and demonstrates that other grounds existed for Lanier's identification of Glenn as the suspect. As a result, Glenn has failed to show that presenting Wheeler with a single photograph of him, in itself, violated his Fourteenth Amendment due process rights.

Glenn argues Lanier is not entitled to qualified immunity because he did not have "objective probable cause" to seek a warrant. This misstates the applicable standard; qualified immunity protects an officer if he has arguable probable cause to arrest a suspect or, in this case, to seek an arrest warrant. *See Case*, 555 F.3d at 1327. Arguable probable cause is found where "reasonable officers in the same circumstances and possessing the same knowledge as the Defendant[ ] could have believed that probable cause existed to arrest." *Lee v. Ferraro*, 284 F.3d 1188, 1195 (11th Cir. 2002). Arguable probable cause does not require "convincing proof," *id.*, and is legally distinct from the higher standard required for probable cause. *See Jones v. Cannon*, 174 F.3d 1271, 1283 n.3 (11th Cir. 1999) (summarizing Eleventh Circuit decisions on arguable probable cause). The Eleventh Circuit has stressed that "because only arguable probable cause is required, the inquiry is not whether probable cause actually existed, but instead whether an officer reasonably could have believed that probable cause existed, in light of the information the officer possessed." *Montoute v. Carr*, 114 F.3d 181, 184 (11th Cir. 1997).

---

tape in their disclosures, but Glenn did not request production of it prior to the close of discovery on June 30, 2009. Lanier and Morris filed their summary judgment motions on July 20, 2009, and Glenn was given until October 18 to file a response. Despite the fact that Lanier relied heavily on the videotape in his claim for qualified immunity, Glenn failed to file a motion to compel the production of the tape. He also failed to seek relief pursuant to Rule 56(f), which allows a court to deny summary judgment or order a continuance pending further discovery. Lanier and Morris mailed a copy of the tape to Glenn on October 20, 2009. The date Glenn received it is unclear; however, the record shows he did not seek to amend his response to Lanier's motion after he received it. In fact, Glenn filed a motion to compel discovery only on March 12, 2010, complaining that the tape he received was not readily viewable on his video equipment. The court notes that Lanier had advised Glenn before producing the tape that it was difficult to view on most video equipment. Glenn's failure to seek timely production of the tape, to seek relief under Rule 56(f), or to request leave to amend his response precludes him from claiming at this point that he was unable to fully respond to Lanier's motion for summary judgment because he did not have the necessary evidence to do so.

Glenn has not presented any argument as to why arguable probable cause does not exist in this case. Even if Lanier's identification was objectively incorrect, which Glenn has not shown, qualified immunity can still protect Lanier from suit; a law enforcement officer who seeks an arrest warrant based on a mistaken identification is entitled to qualified immunity, provided that "a reasonable officer in [his] situation could have followed a similar course of action and believed that probable cause existed." *Rushing v. Parker*, — F.3d —, No. 09-12637, 2010 WL 918323, at *4 (11th Cir. March 16, 2010). As the Eleventh Circuit has emphasized, the test for qualified immunity is not based on the objective accuracy of an identification but on whether an officer "made a reasonable mistake in the legitimate performance of [his] duties." *Kingsland v. City of Miami*, 382 F.3d 1220, 1233 (11th Cir. 2004). In *Post v. City of Fort Lauderdale*, 7 F.3d 1552 (11th Cir. 1993), for example, officers arrested a restaurant owner for violating an ordinance limiting the maximum capacity of customers in the restaurant to twenty-two. Even though there were fewer than twenty-two customers in the restaurant at the time, and a more careful count could have distinguished between customers and employees, the Eleventh Circuit held that qualified immunity applied because the officers' mistake was reasonable under the circumstances; the restaurant was crowded, and the officers had to distinguish between customers and servers. *See Post*, 7 F.3d at 1558. In this case, Lanier had more time than did the officers in *Post* to conduct an investigation but, as in *Post*, Lanier believed that the evidence before him was sufficient under the circumstances to identify Glenn. Glenn has presented no evidence as to why Lanier was not entitled to rely on his own identification of Glenn as the man he saw in the videotape. Glenn has not produced the photograph, proffered any evidence showing the similarity or dissimilarity between the photo and the man appearing in the tape, or shown that Lanier had any other standard, such as personal knowledge of Glenn, by which to evaluate the image he saw on the bank's security tape. Even if Glenn was not the man in the videotape, there is no evidence that Lanier had reason to believe Glenn was not the suspect or that other reasonable officers would have reached a different conclusion. Although Lanier's investigation may not have been perfect, qualified immunity protects "from suit all but the plainly incompetent or one who is knowingly violating the

federal law." *Vinyard v. Wilson*, 311 F.3d 1340, 1346 (11th Cir. 2002) (citation omitted); *Rushing*, — F.3d —, 2010 WL 91823, at *4 (stating that a flawed investigation does not preclude qualified immunity providing it "was not plainly incompetent.") (internal quotation and citation omitted).

Glenn argues, however, that specific circumstances in this case should have alerted Lanier to the fact that Wheeler's identification of him was unreliable. He alleges that he had reported the theft of his wallet to the "TPD" (apparently indicating the Tampa Police Department) in January, 2005, and could not have presented his driver's license to Wheeler. He also claims to have been incarcerated in Hillsborough County when the checks were cashed. Moreover, only "one of the world's stupidest criminals" would have presented his own driver's license to a bank teller to cash a forged check, Glenn argues, and Lanier should have known Glenn was not the man he sought. The summary judgment record is devoid of any evidence supporting these factual allegations. Glenn directs the court's attention to a form submitted to the "TDP" reporting the theft, claiming that it is attached to his complaint. This report was not part of the complaint removed to this court, and Glenn has not submitted it as an exhibit to his memorandum. Glenn also relies on a Charge Report from Hillsborough County to substantiate the claim that he was incarcerated there when the forged checks were cashed. The Charge Report, however, states that Glenn had been released on a surety bond at 1:48 p.m. on April 26, 2005, two days before a man presented the checks to Wheeler.[8] Nevertheless, Glenn argues that qualified immunity is unavailable to Lanier because the unlikelihood that he was at PFCB on April 26 implies that Lanier's conduct was "deliberate and malicious." This argument misconstrues the nature of qualified immunity, which is based on an objective standard and does not involve questions about an officer's subjective intent. *See Von Stein v. Brescher*, 904 F.2d 572, 579 (11th Cir. 1990). "The essence of qualified immunity analysis is the public official's objective reasonableness, regardless of his underlying intent or motivation."

---

[8] Glenn's complaint mistakenly alleges that the forged checks were presented to Wheeler on April, 26, 2005, when Glenn was incarcerated in Hillsborough County. The checks plainly indicate that they were cashed on April, 28, two days after Glenn was released from jail.

*Kingsland*, 382 F.3d at 1231 (citation omitted). An intelligent forger may not wish to give a bank teller his driver's license photograph and number, but it is was reasonable for Lanier to conclude from his investigation that Glenn was the correct suspect. In the absence of any evidence that Lanier knowingly lied or had reason to know Glenn was not guilty, Lanier is entitled to qualified immunity on Count I.

Qualified immunity also protects Lanier from Glenn's claim of malicious prosecution in Count II. In order to bring this claim under § 1983, Glenn has the dual burden of demonstrating a violation of his Fourth Amendment right against an unreasonable seizure and the common law action of malicious prosecution. *Wood v. Kesler*, 323 F.3d 872, 881-82 (11th Cir. 2003). Florida law requires a showing of six elements for this tort: (1) a judicial proceeding was commenced against the plaintiff; (2) the defendant was the "legal cause" of the proceeding; (3) the proceeding was terminated in favor of the plaintiff; (4) no probable cause existed to institute the prosecution; (5) the defendant acted with malice; and, (6) the plaintiff suffered damages as a result of the proceeding. *Kingsland*, 382 F.3d at 1234. It is undisputed that Lanier was not involved in the arrest or prosecution of Glenn, but Glenn argues that this claim meets the common law standard for malicious prosecution because Lanier knew Wheeler's identification of Glenn was not entirely certain; according to Glenn, this implies that Lanier acted maliciously and lacked probable cause to obtain a warrant. As discussed more fully below, Florida law does not distinguish between probable cause and arguable probable cause as an element of malicious prosecution. The court does not address the probable cause element of malicious prosecution at this point because Glenn overlooks his threshold burden to show a violation of his Fourth Amendment rights in order to carry his burden of proof on Count II. As stated above, no violation of the Fourth Amendment occurred when Lanier applied for the arrest warrant because he had arguable probable cause to make the application. Consequently, Glenn's Fourth Amendment right against an unreasonable seizure was not violated, and Lanier is entitled to qualified immunity on Count II.

In Count IV, Glenn alleges that Lanier conspired with PFCB and Wheeler to violate Glenn's Fourth Amendment rights by agreeing to manufacture false evidence in order to

obtain an arrest warrant. A § 1983 suit can include conspiracy claims between state actors like Lanier and non-governmental entities if the plaintiff can show the parties "reached an understanding" to deny him a right guaranteed by the Constitution. *Adickes*, 398 U.S. at 152; *Bendiburg v. Dempsey*, 909 F.2d 463, 468-69 (11th Cir. 1990). "However, to sustain a conspiracy action under § 1983 . . . a plaintiff must show an underlying actual denial of its constitutional rights." *GJR Investments, Inc. v. County of Escambia, Florida*, 132 F.3d 1359, 1370 (11th Cir. 1998); *see also Hadley v. Gutierrez*, 526 F.3d 1324, 1332 (11th Cir. 2008) (stating that both an agreement and an underlying harm must be shown). Glenn admits that he lacks evidence to support his claim that Wheeler reached an agreement with Lanier but contends that a reasonable fact finder would infer that Lanier could not have submitted his warrant application without such an agreement. This argument fails to address either prong of the two-part test for overcoming a defense of qualified immunity. *See Saucier*, 533 U.S. at 201. Glenn does not contend that clearly established law protected him from the alleged conspiracy, nor does he show that Lanier and Wheeler reached an agreement to conspire against him. Glenn points to the fact that Wheeler and Lanier met to review Glenn's photograph, but that uncontested evidence does not give rise to an inference that the two conspired to falsely identify Glenn. As before, Glenn ignores the fact that Lanier also identified him in the PFCB videotape and cited the tape as a basis for obtaining the arrest warrant.[9] Uncontested evidence shows that Lanier had reasonable grounds for identifying Glenn as the perpetrator and had arguable probable cause for obtaining an arrest warrant. In the absence of any evidence supporting a conspiracy claim, Lanier is entitled to qualified immunity on Count IV.

---

[9] Glenn contends that additional discovery is required for him to bear his burden of proof because Wheeler's testimony is central to showing that a conspiracy existed. In this case, however, ample time for discovery was allowed. The court issued a Final Scheduling Order on March 4, 2009, giving the parties until June 30, 2009, to complete discovery; Lanier's motion was filed on July 20, 2009, and Glenn was given until October 18 to file his response. "In qualified immunity cases, the Rule 56(f) balancing is done with a thumb on the side of the scale weighing against discovery," *Harbert Intl, Inc. v. James*, 157 F.3d 1271, 1280 (11th Cir. 1998), because one of the purposes of qualified immunity is to protect defendants from the ordinary burdens of litigation. *Siegert v. Gilley*, 500 U.S. 226, 232 (1991).

B.  The State Law Claims

Glenn asserts two state law claims against Lanier for false arrest and malicious prosecution and one claim of false arrest against Morris.  A federal court has supplemental jurisdiction over state law actions "that are so related to claims in the action within [the court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a); *Parker v. Scrap Metal Processors, Inc.*, 468 F.3d 733, 742-43 (11th Cir. 2006).  A court has discretion to exercise its jurisdiction over such actions even after the federal claims giving rise to original jurisdiction have been dismissed.  28 U.S.C. § 1367(c); *Pintando v. Miami-Dade Housing Agency*, 501 F.3d 1241, 1242-43 (11th Cir. 2007).  In this case, the state law claims asserted against Lanier and Morris involve the same facts that support Glenn's § 1983 claims, and the court has supplemental jurisdiction over them.  The Eleventh Circuit has made clear that once a court finds it has supplemental jurisdiction under § 1367(a), it should exercise it unless the criteria listed in § 1367(c) apply.[10]  *Baggett v. First Nat'l Bank of Gainesville*, 117 F.3d 1342, 1352 (11th Cir. 1997).  On balance, these factors favor retaining jurisdiction over the state law claims against Lanier and Morris because they are merely ancillary to Glenn's § 1983 issues and involve well-settled principles of Florida law that are neither novel nor complex.  *See* 28 U.S.C. § 1367(c)(1) & (2).  No extraordinary circumstances, such as convenience or fairness to the parties, favors dismissing the common law actions.  *See id*. at § 1367(c)(4); *Parker*, 468 F.3d at 746-47.  Both Lanier and Morris have moved for summary judgment on the common law issues and have amply briefed the merits of Glenn's claims.  Although Glenn has failed to respond on state law grounds, the court considers the summary judgment motions because Glenn was put on notice that the court might exercise its supplemental jurisdiction in this matter.

---

[10]  Section 1367(c) establishes four factors a court should consider in declining to exercise supplemental jurisdiction: (1) the existence of a novel or complex issue of state law; (2) the predominance of state law issues over the claims giving rise to original jurisdiction; (3) the dismissal of all claims over which the court has original jurisdiction; and (4) other compelling reasons for declining jurisdiction.

Relying on the same facts that supported his § 1983 claims, Glenn alleges in Count VIII that Lanier falsely arrested and imprisoned him.  The torts of false arrest and false imprisonment are virtually identical under Florida law.[11]  *Card v. Miami-Dade County, Florida*, 147 F. Supp.2d 1334, 1347 (S.D. Fla. 2001).  Both actions are defined as "the unlawful restraint of a person against his will, the gist of which action is the unlawful detention of the plaintiff and the deprivation of his liberty."  *Escambia County School Bd. v. Bragg*, 680 So.2d 571, 572 (Fla. 1st DCA 1996).  Lanier argues that the warrant in this case defeats this claim because an arrest made pursuant to a valid warrant cannot give rise to claims of false arrest and false imprisonment under Florida law.  *See Jackson v. Navarro*, 665 So.2d 340, 341-42 (Fla. 4th DCA 1995); *Dodson v. Solomon*, 183 So. 825, 826 (Fla. 1938) ("If the imprisonment is under legal authority it may be malicious but it cannot be false.").  Although true, this argument misconstrues to some degree the nature of Glenn's claim, which does not allege the warrant was facially invalid but that Lanier supplied false information to obtain it.  Both federal and Florida law require an arresting officer to conduct a reasonable investigation in order to determine if probable cause exists to arrest a person.  *Rankin v. Evans*, 133 F.3d 1425, 1433 (11th Cir. 1998).  Neither party addresses the extent to which this requirement applies to a non-arresting officer like Lanier, but Florida law recognizes that a person can be liable for false imprisonment "directly *or indirectly* by procurement, in the unlawful restraint of another person against their will." *Harris v. Kearney*, 786 So.2d 1222, 1225 (Fla. 4th DCA 2001) (emphasis added).  As discussed earlier, however, Glenn has not shown how Lanier's identification of him was so unreasonable under the totality of circumstances that arguable probable cause is lacking. Consequently, Glenn has failed to show such error in Lanier's investigation that Glenn can raise a claims of false arrest and false imprisonment under Florida law.

---

[11]  Florida courts have not reached complete agreement on the identity of these claims.  Some have concluded that they are different labels for the same cause of action.  *See, e.g.*, *Weissman v. K-Mart Corp.*, 396 So.2d 1164, 1165 n.1 (Fla. 3d DCA 1981).  Others have found that false imprisonment is a broader common law tort and that "false arrest is only one of several methods of committing false imprisonment." *Mathis v. Coats*, 24 So.3d 1284, 1289 (Fla. 2d DCA 2010).

In Count X, Glenn alleges that Lanier's false statements supporting the arrest warrant also give rise to a claim of malicious prosecution. Florida law requires a showing of six elements for this tort: (1) a judicial proceeding was commenced against the plaintiff; (2) the defendant was the "legal cause" of the proceeding; (3) the proceeding was terminated in favor of the plaintiff; (4) no probable cause existed to institute the prosecution; (5) the defendant acted with malice; and, (6) the plaintiff suffered damages as a result of the proceeding. *Kingsland*, 382 F.3d at 1234. "The failure of a plaintiff to establish any one of these six elements is fatal to a claim of malicious prosecution." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So.2d 1352, 1355 (Fla. 1994). The existence of malice is ordinarily a matter for a jury to decide, *Northwest Florida Home Health Agency v. Merrill*, 469 So.2d 893, 901 (Fla. 1st DCA 1985); consequently, the court examines the issue of whether probable cause, not merely arguable probable cause, exists in this case. *Kingsland*, *supra*, and other cases do not distinguish between probable cause and the lower standard of arguable probable cause as an element of malicious prosecution. Florida law acknowledges that probable cause is a "fluid concept" that deals in probabilities, not certainties, and allows officers to reach common sense conclusions. *See State v. Catt*, 839 So.2d 757, 759 (Fla. 2d DCA 2003) (citation omitted). "Probable cause exists when the circumstances are sufficient to cause a reasonably cautious person to believe that the person [arrested] is guilty of a criminal offense." *Daniel v. Village of Royal Palm Beach*, 889 So.2d 988, 990 (Fla. 4th DCA 2004) (citation omitted).

The undisputed facts of this case support a finding that Lanier had probable cause to seek a warrant for Glenn's arrest. Glenn has not shown that he suffered a constitutional harm from Lanier's investigation when viewed in its totality. Lanier spoke with Mike Duncan and learned that Duncan's signature on the bottom of the checks was not authentic. Although his method of obtaining an identification from Wheeler was "by no means perfect," *Rushing*, — F.3d —, 2010 WL 918323, at *4, Lanier personally viewed the videotape to confirm Wheeler's identification of Glenn. Glenn's contention that Wheeler's lack of certainty in identifying him makes the existence of probable cause impossible here overlooks the well-settled principle that Lanier was not required to obtain information

conclusively proving that Glenn was the criminal. *Lee v. Geiger*, 419 So.2d 717, 719 (Fla. 1st DCA 1982). Circumstantial evidence, inferences, and commonsensical interpretations of facts can lead to probable cause as long as an officer's conclusions are reasonable under the circumstances. See *State v. Powers*, 388 So.2d 1050, 1051 (Fla. 4th DCA 1980). The undisputed summary judgment record plainly shows that Lanier could have reasonably concluded that Glenn was the man he sought; thus, Glenn's claim of malicious prosecution fails.

3.    Charles Morris

Glenn alleges in Count III that Morris, the Sheriff of Okaloosa County at the time of Glenn's arrest, violated Glenn's constitutional rights by: (1) failing to correct violations of constitutional protections; (2) initiating a custom and policy that was deliberately indifferent to Glenn's rights; and (3) acting in a way that caused the violation of Glenn's Fourth Amendment rights.[12]    Count III is brought against Morris in his individual capacity, and Glenn's counsel reaffirms in his brief that Count III is not asserted against Morris in his official capacity. A supervisor is personally liable only when: (1) he personally participates in the alleged constitutional violation, or (2) a causal connection exists between the supervisor's actions and the alleged harm. *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1308 (11th Cir. 2009). Supervisory officials are not liable for the acts of their subordinates on the basis of vicarious liability. *Braddy v. Florida Dept. of Labor and Employment Sec.*, 133 F.3d 797, 802 (11th Cir. 2009) (noting that the standard for individual supervisory liability is "extremely rigorous."). Moreover, a plaintiff cannot assert a supervisory liability claim in the absence of an underlying constitutional violation. *Id.*; *see also Hicks v. Moore*, 422 F.3d 1246, 1253 (11th Cir. 2005).

Under this standard, Morris is clearly entitled to qualified immunity. As shown above, Lanier did not violate Glenn's constitutional rights, so no underlying Fourth

---

[12]    Morris has subsequently been replaced by Ed Spooner as Okaloosa County Sheriff. By operation of law Spooner is substituted for Morris in his official capacity. *See* Fed. R. Civ. P. 25(d). However, in light of the court's dismissal of all of Glenn's claims against Morris, both individually and officially, it is not necessary to substitute Spooner for Morris in the court's docket.

Amendment harm exists to support a supervisory liability claim. Even if a constitutional violation occurred, Glenn's complaint does not allege Morris participated in the events that led to Glenn's arrest. Lanier testified that Morris had no involvement in his investigation or in the warrant application, and Glenn has not presented any evidence to the contrary. He argues instead that testimony of Larry Ashley, the former Director of the Investigations Division of the Okaloosa County Sheriff's Office, shows a pattern of abuse that connects Morris to improper procedures resulting in Glenn's unconstitutional arrest. Supervisory liability can be established when (1) a history of widespread abuse puts a supervisor on notice that corrective action is needed, and the supervisor fails to respond, or (2) the supervisor's practice, or the absence of a policy, results in a deliberate indifference to constitutional rights. *Dalrymple v. Reno*, 334 F.3d 991, 995-96 (11th Cir. 2003) (citations omitted). A supervisor's failure to train an officer may also constitute a policy giving rise to liability. *Rivas v. Freeman*, 940 F.2d 1491, 1495 (11th Cir. 1991). Glenn relies on a single statement in Ashley's affidavit that arrest warrants in the Okaloosa County Sheriff's Office are sought pursuant to an "established practice." Glenn assumes this statement indicates a *per se* constitutional violation and overlooks the fact that the practice Ashley describes portrays a careful process of submission and review:

> Prior to a warrant for an individual's arrest being presented to a judge for signature, the investigating officer completes an Okaloosa County Sheriff's Office warrant application form. The warrant application form is then reviewed and approved by both a supervisor with the Okaloosa County Sheriff's Office as well as an assistant attorney with the State Attorney's Office before the warrant is presented to a judge for signature. The warrant application form becomes part of the case file maintained by the Okaloosa County Sheriff's Office with respect to the criminal investigation conducted by the investigating officer.

As the party opposing qualified immunity, Glenn bears the burden of showing how this process constitutes such abuse or indifference to constitutional rights such that Morris can be connected to Glenn's alleged harm. He presents no argument on this issue and does not address how Morris trained Lanier or instructed him to act in a manner that would violate the rights of others. Supervisory liability arises only when "a reasonable person in the supervisor's position would have known that his conduct infringed the constitutional

rights of the plaintiff[.]" *Greason v. Kemp*, 891 F.2d 829, 836 (11th Cir. 1990). No summary judgment evidence supports a connection between Morris and Glenn, and Morris is entitled to qualified immunity on Count III.[13]

In Count IX, Glenn also brings a state law claim of false arrest and false imprisonment against Morris in his official capacity as the Okaloosa County Sheriff. The exact nature of this claim is unclear. Unlike Glenn's other claims, Count IX states that Lanier's actions were not malicious, harmful, or undertaken in bad faith; as a result, Glenn claims, Morris is vicariously liable in his official capacity for Lanier's false arrest. Glenn appears to be claiming municipal liability based on Lanier's negligence. *See City of Coral Gables v. Giblin*, 127 So.2d 914, 919-20 (Fla. 3d DCA 1961) (recognizing that a municipality can be vicariously liable for its employees' negligence). Insofar as Glenn is alleging that false arrest can be premised on a claim of negligence, Florida law does not permit such a claim. "A plaintiff contending that he has been improperly arrested as a result of negligence in swearing out a warrant must bear the burden of establishing malice and want of probable cause. Mere negligence alone is insufficient." *Pokorny v. First Fed. Sav. and Loan Ass'n of Largo*, 382 So.2d 678, 683 (Fla. 1980). Nor can a claim be based on allegations of a negligent police investigation. *See Pritchett v. City of Homestead*, 855 So.2d 1164, 1165 (Fla. 3d DCA 2003). No false arrest or false imprisonment occurred in this case, and Lanier did not act in a manner that would create liability for himself or for Morris, either individually or in his official capacity. Moreover, Glenn has failed to address Morris' summary judgment argument in any manner. "The moving party is entitled to judgment as a matter of law if the nonmoving party cannot sufficiently show an essential element of the case to which the nonmoving party has the burden of proof." *Barfield v. Brierton*, 883 F.2d 923, 933 (11th Cir. 1989). In the absence of any response by Glenn,

---

[13] The court does not believe that Count III states an official capacity action against Morris, but such an action would also fail. A suit against a defendant in her official capacity is a suit against the entity that employs her. *Mann*, 588 F.3d at 1308-09. To impose liability on a county or city, a plaintiff must show: (1) his constitutional rights were violated; (2) the county had a policy that was deliberately indifferent to those rights; and (3) the policy caused the violation. *McDowell v. Brown*, 392 F.3d 1283, 1289 (11th Cir. 2004). Glenn has not shown either the deprivation of a constitutional right or a policy that was indifferent to the rights he alleges were violated.

the court finds that Morris is entitled to summary judgment on Count IX.

4.      Wheeler and PFCB

Glenn also asserts three claims of false arrest, malicious prosecution, and conspiracy pursuant to § 1983 against Wheeler and PFCB, as well as a state law claim of malicious prosecution. Neither Wheeler nor PFCB has appeared in this suit, but the court's independent review of Glenn's allegations gives rise to serious concerns about the merits of these claims. Courts can dismiss claims *sua sponte* "when they are so patently lacking in merit as to be frivolous." *Jefferson Fourteenth Assocs. v. Wometco de Puerto Rico, Inc.*, 695 F.2d 524, 526 n.3 (11th Cir. 1983). When claims lack merit, but are not inherently frivolous, a court must provide notice that it is considering dismissing a claim and give the party an opportunity to respond. *Id*. at 527; *see also Davken, Inc. v. City of Dayton Beach*, 159 Fed.Appx. 970, 973 (11th Cir. 2005). Glenn's claims against PFCB and Wheeler are not inherently frivolous; they are unsupported by the record and depend entirely on the claims of false arrest, which Glenn has abandoned, and malicious prosecution, which the court has found does not exist in this case as a matter of law.

Ordinarily, the court would give Glenn notice of its intention to dismiss his claims against both Wheeler and PFCB and allow him an opportunity to respond. In this case, however, the clerk entered default against PFCB on April 15, 2009. *Wometco* addresses the situation in which parties have not appeared, but it does not clarify the propriety of dismissals when a non-appearing party has defaulted. Fed. R. Civ. P. 55(c) authorizes a court to set aside an entry of default "for good cause." *See Anheuser Busch, Inc. v. Philpot*, 317 F.3d 1264, 1267 (11th Cir. 2003) (stating that defaults can be set aside *sua sponte*). Courts consider factors such as the party's willfulness in defaulting, possible prejudice the opposing party, and the existence of a meritorious defense by the defaulting party. *Compania Interamericana Export-Import, S.A. v. Compania Dominicana de Aviacion*, 88 F.3d 948, 951 (11th Cir. 1996). However, a court will ordinarily not set aside a default for a party showing "intentional or reckless disregard for the judicial proceedings[.]" *Id*. at 951-52. That appears to be the case here because PFCB was served but chose not to appear. Thus, the court will not set aside the default against PFCB *sua sponte*. If PFCB

decides to appear and moves to set aside the default, the court will consider its motion and any appropriate action pursuant to *Wometco*.

As it stands, however, only the dismissal of claims against Wheeler will be considered.  Accordingly, the court **hereby notifies Glenn that he shall have 21 days from the entry of this order to file a memorandum of law showing why his claims against Wheeler should not be dismissed**.[14]

**CONCLUSION**

Pursuant to Fed. R. Civ. P. 56, the court finds that Lanier and Morris are entitled to qualified immunity on all claims asserted against them pursuant to § 1983.  The court also finds that all claims asserted against Lanier and Morris pursuant to Florida state law are without merit.  Accordingly,

1.	The Motion to Submit Affidavits (doc. 72) by Lanier and Morris is GRANTED; plaintiff's Motion to Strike (doc. 74) is DENIED;

2.	Defendant Morris' Motion for Summary Judgment (doc. 31) is GRANTED;

3.	Defendant Lanier's Motion for Summary Judgment (doc. 32) is GRANTED;

4.	Final judgment will be entered on disposition of all claims in the case.

**DONE AND ORDERED** this 31st day of March, 2010.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**

---

[14]  This is not an invitation to reargue the facts or law as pertaining to the rulings made in this order.

Case No. 3:09cv1/MCR/MD